1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   JANIE MISAK,                          Case No. 1:22-cv-01348-CDB (SS)

12             Plaintiff,                   ORDER GRANTING PLAINTIFF'S
                                            MOTION FOR SUMMARY JUDGMENT
13        v.                                AND REMANDING ACTION PURSUANT
                                            TO SENTENCE FOUR OF 42 U.S.C.
14   COMMISSIONER OF SOCIAL SECURITY,       §405(g)

15             Defendant.                   (Doc. 16)

16

17        Plaintiff Janie Misak ("Plaintiff") seeks judicial review of a final decision of the

18   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

19   disability benefits under the Social Security Act ("SSA" or "Act").  (Doc. 1).  The matter is before

20   the Court on the Administrative Record (Doc. 11, hereinafter "AR") and the parties' briefs (Docs.

21   16, 19, 20), which were submitted without oral argument.  Upon review of the record, the Court

22   finds and rules as follows.[1]

23   I.    **BACKGROUND**

24        A.    **Administrative Proceedings and ALJ's Decision**

25        On September 9, 2019, Plaintiff applied for supplemental security income and a period of

26   disability and disability insurance benefits with an alleged onset date of January 1, 2004.  (AR 15).

27   ───────────────────
          [1] On November 10, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate
28   Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a
     U.S. Magistrate Judge.  (Doc. 10).

1   Plaintiff's claim was initially denied on January 10, 2020, and again upon reconsideration on March

2   9, 2020.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge on March 13, 2020.

3   *Id.*  Regina Carpenter, the Administrative Law Judge ("ALJ"), held a telephone hearing on April

4   21, 2021, wherein Plaintiff, represented by counsel, and impartial vocational expert Larry Bell,

5   both testified.  *Id.*  The ALJ issued an unfavorable decision on August 25, 2021, finding Plaintiff

6   was not disabled.  (AR 12, 17-26).  The Appeals Council denied Plaintiff's request for review on

7   August 16, 2022, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1).

8   Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

9       In the decision, the ALJ considered Plaintiff's claims using the five-step sequential

10   evaluation required by 20 C.F.R. § 416.920(a).  (AR 17-26).  The ALJ found that Plaintiff meets

11   the insured status requirements of the Social Security Act ("Act") through March 31, 2016.  (AR

12   17).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

13   January 1, 2004, the alleged onset date.  *Id.*

14       At step two, the ALJ found that Plaintiff has the following medically determinable

15   impairments ("MDIs"): hypertension, pre-diabetes, plantar wart (right foot), allergic rhinitis,

16   urinary incontinence, and major depressive disorder.  *Id.*  The ALJ found that Plaintiff did not have

17   an impairment, or any combination of impairments, that significantly limited (or is expected to

18   significantly limit) the ability to perform basic work-related activities for 12 consecutive months

19   and therefore Plaintiff does not have a severe impairment or combination of impairments under 20

20   C.F.R. 404.1521 *et seq.* and 416.921 *et seq.*  (AR 18).  The ALJ noted in reaching this conclusion

21   that she considered all of Plaintiff's symptoms and the extent to which these symptoms can

22   reasonably be accepted as consistent with the objective medical evidence and other evidence, based

23   on the requirements of 20 CFR 404.1529 and 416.929 and Social Security Ruling ("SSR") 16-3p.

24   *Id.*

25       The ALJ addressed Plaintiff's allegations that she is disabled because of high blood

26   pressure, overactive bladder, cognitive troubles, and depression.  *Id.*  The ALJ noted Plaintiff's

27   testimony thereto:

28   ///

[Plaintiff] indicated that she experiences sadness, crying spells, fears, worries, hallucinations, and sleep disturbance. [She] expressed concern that she tends to struggle writing basic notes and checks. Even though she said that she is able to add and subtract small numbers, [she] noted that she is unable to read a newspaper or write her address without copying it. She acknowledged marijuana use but noted that it occurs only 1-2 times daily.

Concerning medications and treatment, [she] said that she needs medications to regulate her blood pressure, uses Myrbetriq for overactive bladder, and has used Claritin for allergic rhinitis. [She] did not express having much success with her medication regimen.

Describing her reduced abilities, [she] indicated that she has difficulties completing tasks, concentrating, understanding, remembering, following written instructions, relating to others, and handling stress. Even though [she] noted that she is able to attend to personal needs and perform some household tasks, she said that she requires a long period to clean and wash laundry.

(AR 18-19) (citing Exs. 2E, 6E, 9E, 14E, 4F, 10F); *see id.* at 32-72 ("Hearing Testimony"). The ALJ considered Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, finding her statements are inconsistent with the evidence of record and therefore supports a finding of no severe impairments. (AR 19).

Because Plaintiff's motion for summary judgment raises error only as to the ALJ's finding as non-severe her impairments of major depressive disorder, urinary incontinence, and Borderline Intellectual Functioning, the Court notes only the relevant portions of the ALJ's decision below. *See* (Doc. 16 at 4).

As to Plaintiff's alleged physical impairments of urinary incontinence, the ALJ found that Plaintiff did not present consistent evidence of considerable urinary troubles, citing to record evidence that Plaintiff uses Myrbetriq but that she denied incontinence on September 13, 2019, and later described only occasional incontinence on December 2, 2019. (AR 19) (citing Ex. 5F). The ALJ concluded there is no record evidence supporting any work-related limitation related to her urinary urgency for any 12-month consecutive period. *Id.*

As to Plaintiff's allegations of depression, the ALJ found no record evidence supporting any work-related limitation related to her depression for any 12-month consecutive period, citing to evidence that: Plaintiff has been stable from a mental health standpoint; although she had some periods during which she experienced elevated depressive symptoms, she attended an appointment

on September 13, 2019, during which she made good eye contact, had a good mood, spoke clearly, possessed linear thought content, and offered no evidence of delusions or hallucinations; during an evaluation on December 2, 2019, she was fully oriented, denied depression, and mentioned having a good memory; in June 2020, her depression was noted to be stable and she declined anti-depressant treatment; and that she has had very minimal treatment.  (AR 20) (citing Exs. 5F, 9F).

The ALJ considered Plaintiff's reported "significant range" of ADLs, noting she testified that:

> She has trouble[] completing tasks, but [she] also described dressing, bathing, and caring for her hair independently, preparing food daily (such as frozen dinners), cleaning around the home, washing laundry, and shopping in stores (as needed). [She] did not identify needing assistance to feed herself and use the toilet.  Although [she] did not discuss engaging in much social activity, she explained that she is able to go outside alone, spend time with others, maintain a relationship with family members, go places without accompaniment, get along with family, neighbors, and friends, and get along with authority figures.  She also reported having the necessary focus, despite her impairments, to take care of personal needs and grooming without any special reminders, take medication without reminders, pay bills, count change, watch television, go places without reminders, and follow spoken instructions.

(AR 20) (citing Exs. 6E, 9E, Hearing Testimony).

The ALJ considered Plaintiff's allegations of borderline intellectual functioning.  Because Plaintiff's counsel argued at the hearing that Plaintiff has significant intellectual impairments that needed to be assessed, the ALJ scheduled a psychological consultative examination with testing that was performed on July 13, 2021, by Dr. Pasek.  (AR 21)  Plaintiff's counsel argued in his post-hearing memorandum that the findings of the consultative examination are sufficient to establish a medically determinable severe impairment.  *Id.*  The ALJ disagreed, noting that while Dr. Pasek's opinion found that Plaintiff's overall cognitive ability is "likely borderline," Dr. Pasek offered no formal diagnosis due to significant inconsistencies in the testing and found that Plaintiff has no impairment in any category.  *Id.* (citing Ex. 10F).  The ALJ therefore found that she "cannot imply an objectively documented severe [MDI] from this report."  *Id.*  The ALJ considered Dr. Pasek's observations, noting that: though Dr. Pasek observed Plaintiff reported sadness on occasion, Dr. Pasek did not suggest that Plaintiff struggled with pressures of the examination, described Plaintiff

4

as respective, cooperative, and pleasant, and stated that Plaintiff maintained adequate eye contact; Dr. Pasek explained that Plaintiff did not recall several words after a delay and could not spell "world" backward, but Dr. Pasek also reported that Plaintiff was able to discuss her medical history and some details about schooling and work history, spoke fluently, was fully oriented, exhibited the ability to remember as she remembered three of three words immediately, recalled her breakfast from the morning of the examination, and remembered her date of birth and family history, presented with organized and logical processes, did not suffer significant poverty of thought, had unimpaired attention span, recited six digits forwards and backwards, performed simple calculations, and spelled "world" forward. (AR 21). The ALJ further noted from Dr. Pasek's consultative examination that Dr. Pasek indicated that Plaintiff was dressed and groomed appropriately, did not have evidence of active psychotic thought process, gave no signs of perceptual disturbances, denied suicidal and homicidal ideation, displayed appropriate insight and judgment related to imaginary situations, and her mental status examination revealed that her memory was overall unimpaired as was her attention and concentration. *Id.* (citing Ex. 10F).

The ALJ considered Plaintiff's WAIS-IV IQ test, noting it revealed: a verbal comprehension score of 63; perceptual reasoning score of 79; working memory score of 77; processing speed score of 76; and a full-scale IQ score of 69. (AR 22) (citing Ex. 10F). The ALJ considered Dr. Pasek's comments on this testing:

> [Plaintiff's] unique set of thinking and reasoning abilities make her overall intellectual functioning difficult to summarize by a single score on the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV). Her nonverbal reasoning abilities are much better developed than her verbal reasoning abilities. Processing complex visual information by forming spatial images of part-whole relationships and/or by manipulating the parts to solve novel problems without using words is a relative strength. Making sense of complex verbal information and using verbal abilities to solve novel problems are less developed abilities for [Plaintiff]. [Her] overall cognitive ability, as evaluated by the WAIS-IV, cannot easily be summarized because her nonverbal reasoning abilities are much better developed than her verbal reasoning abilities. [Plaintiff's] reasoning abilities on verbal tasks are generally in the extremely low range (VCI = 63), while her nonverbal reasoning abilities are significantly higher and in the borderline range (PRI = 79). [Her] ability to sustain attention, concentrate, and exert mental control is in the borderline range (WMI = 77). Due to variability between the two subtests that compose the WMI, caution is recommended when interpreting this single score and a closer look at the

1

2

> individual subtests is warranted. [Plaintiff's] ability in processing simple or routine visual material without making errors is in the borderline range when compared to her peers (PSI = 76).

3    (AR 22) (citing Ex. 10F).  The ALJ noted that a Weschler Memory Scale revealed scores that were

4    in "extremely low for [Plaintiff's] age group" and noted Dr. Pasek's comments on the validity of

5    these tests results that "appear to be a somewhat questionable estimate of [Plaintiff's] current

6    functional level. Rapport between this examiner and [Plaintiff] was adequate for test purposes.

7    [Plaintiff] appeared to put forth inconsistent effort. Therefore, her scores should be taken with

8    caution."  *Id.*   The ALJ noted that despite the testing, Dr. Pasek concluded that "[b]ased on

9    presentation during the evaluation, test results, provided records, and by history, [Plaintiff's]

10   allegations do not appear to be substantiated for a severe and pervasive mental health disorder" and

11   that Plaintiff has no mental health diagnoses.  (AR 23).  The ALJ noted from Dr. Pasek's

12   conclusions:

13

14   > Based upon today's assessment, [Plaintiff] demonstrates no impairment to understand, remember and carry out short and simplistic, and verbally based, instructions[; she] demonstrates no impairment to understand, remember and carry out short and simplistic, and visually based instructions.

15

16   > [Plaintiff] presents with no impairment to understand, remember, and carry out complex and detailed verbally based instructions. [She] presents with no impairment to understand, remember, and carry out complex and detailed, and visually based instructions.

17

18

19   > Based on history and today's assessment, [Plaintiff] demonstrates no impairment in handling complex work-related decisions; [her] concentration, persistence, and pace appear to be unimpaired in the ability to engage in and sustain in an activity over a period of time; [she] would be able to interact appropriately with supervisors, coworkers, and peers. By history, clinical interview observations, and test results, [Plaintiff] has no impairment to maintain attendance and complete an eight-hour workday in a regular workplace setting.

20

21

22

23   (AR 23) (citing Ex. 10F).  The ALJ concluded that Dr. Pasek's findings and opinions are persuasive

24   because they are consistent with her evaluation and observations regarding the validity of the

25   testing, with the opinion of treating provider Dr. Marleen Cornell, and with the overall evidence of

26   record indicating stability from a mental health standpoint.  (AR 23).

27       Dr. Cornell offered an assessment on January 26, 2021, concluding that Plaintiff has no

28   limitations in terms of understanding and remembering, concentrating and using memory,

interacting socially, and adapting in the workplace.  (AR 23) (citing Ex. 7F).  The ALJ found Dr. Cornell's opinion persuasive as she is familiar with Plaintiff's medical history and her conclusions are consistent with Dr. Pasek's opinions.  *Id.*

The ALJ found unpersuasive the opinions of two state agency psychological consultants, finding the opinions inconsistent with Dr. Pasek and Dr. Cornell's opinions assessing that Plaintiff has no limitations with respect to understanding, remembering, and carrying out instructions and with respect to interacting appropriately with supervision, co-workers, and the public and responding to changes in the routine work setting.  (AR 24).

The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities is consistent with the evidence of record.  *Id.*

Because Plaintiff alleged mental MDIs, the ALJ considered the four broad functional areas of mental functioning listed in the "paragraph B" criteria.[2]  The ALJ found that Plaintiff has no limitations in all four functional areas, citing in support Plaintiff's ADLs, and the findings of Dr. Pasek and Dr. Cornell.  (AR 24-25).  Because the ALJ found that Plaintiff's mental MDIs cause no more than "mild" limitations in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ found these mental MDIs are non-severe.  (AR 25) (citing 20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)).

The ALJ therefore concluded after Step Two of the five-factor analysis that Plaintiff's physical and mental impairments, considered singly and in combination, do not significantly limit her ability to perform basic work activities and therefore she does not have a severe impairment or combination of impairments.  (AR 25).

The ALJ determined that Plaintiff has not been under a disability as defined in the Act from

---

[2] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id.*

1  January 1, 2004, through the date of the decision. (AR 26) (citing 20 C.F.R. 404.1520(c) and

2  416.920(c)).  The ALJ therefore concluded a finding of "not disabled" was appropriate under

3  sections 216(i), 223(d), and 1614(a)(3)(A) of the Act and denied her applications for a period of

4  disability and disability insurance benefits and for supplemental security income.  *Id.*

5       **B.     Medical Record and Hearing Testimony**

6       The relevant hearing testimony and medical record were reviewed by the Court and will be

7  referenced below as necessary to this Court's decision.

8  **II.    LEGAL STANDARD**

9       A district court's review of a final decision of the Commissioner of Social Security is

10  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

11  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

12  based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

13  means "relevant evidence that a reasonable mind might accept as adequate to support a

14  conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

15  equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation

16  omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support

17  a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation

18  omitted).  In determining whether the standard has been satisfied, a reviewing court must consider

19  the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

20       The court will review only the reasons provided by the ALJ in the disability determination

21  and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

22  42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

23  judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

24  evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d

25  1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

26  of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's]

27  ultimate nondisability determination."  *Id.* (quotation and citation omitted).  The party appealing

28  the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

1    *Sanders*, 556 U.S. 396, 409-10 (2009).

2        A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

3    within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any

4    substantial gainful activity by reason of any medically determinable physical or mental impairment

5    which can be expected to result in death or which has lasted or can be expected to last for a

6    continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the

7    claimant's impairment must be "of such severity that he is not only unable to do his previous

8    work[,] but cannot, considering his age, education, and work experience, engage in any other kind

9    of substantial gainful work which exists in the national economy."  42 U.S.C. §

10   1382c(a)(3)(B).

11       The Commissioner has established a five-step sequential analysis to determine whether a

12   claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

13   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

14   is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

15   disabled.  20 C.F.R. § 416.920(b).

16       If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

17   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R.

18   § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments

19   which significantly limits [his or her] physical or mental ability to do basic work activities," the

20   analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

21   satisfy this severity threshold, however, the Commissioner must find that the claimant is not

22   disabled.  *Id*.

23       At step three, the Commissioner compares the claimant's impairment to impairments

24   recognized by the Commissioner to be so severe as to preclude a person from engaging in

25   substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

26   severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

27   and award benefits.  20 C.F.R. § 416.920(d).

28       If the severity of the claimant's impairment does not meet or exceed the severity of the

9

1  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

2  functional capacity," defined generally as the claimant's ability to perform physical and mental

3  work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

4  At step four, the Commissioner considers whether, in view of the claimant's RFC, the

5  claimant is capable of performing work that he or she has performed in the past (past relevant

6  work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work,

7  the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the

8  claimant is incapable of performing such work, the analysis proceeds to step five.

9  At step five, the Commissioner considers whether, in view of the claimant's RFC, the

10  claimant is capable of performing other work in the national economy. 20 C.F.R. §

11  416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational

12  factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is

13  capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

14  C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis

15  concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

16  The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

17  180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

18  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

19  work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

20  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

21  **III.    ISSUES AND ANALYSIS**

22  Plaintiff seeks judicial review of the Commissioner's final decision denying her application

23  and raises the sole issue that the ALJ harmfully erred by ceasing the disability evaluation at Step

24  Two. (Doc. 16 at 2).

25  **A.    Whether the ALJ Erred in Ceasing the Disability Evaluation at Step Two**

26  1.    Parties' Contentions

27  Plaintiff contends the ALJ harmfully erred by ceasing the sequential evaluation at Step Two

28  under the de minimis standard. (Doc. 16 at 4) (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th

10

Cir. 2005).  Plaintiff argues the ALJ harmfully erred by failing to find her psychological and physical MDIs of major depressive disorder, urinary incontinence, and Borderline Intellectual Functioning ("BIF") to be severe impairments.  *Id.*  As to her major depressive disorder, Plaintiff points to her medical and treatment history, medical opinion evidence, and activities of daily living ("ADLs"), arguing such record evidence establishes she suffers from "more than minimal" functional impairment or combination of impairments. *See id.* at 6-11.  Plaintiff next argues that there is substantial evidence that her diagnosed urinary incontinence more than minimally affects her ability to perform basic work activities.  *Id.* at 11-13.  Plaintiff argues the ALJ erred in finding that the objective record evidence does not support a finding that her impairment of BIF does not at least more than minimally affect her ability to perform work activity in a normal environment. *Id.* at 13-16.  Lastly, Plaintiff contends the ALJ harmfully erred in failing "her heightened duty to develop the record and send [Plaintiff] for additional intellectual and other psychiatric testing or to have a [medical examiner] review the evidence and clarify the 'ambiguity' identified by the ALJ and the [consultative examiner]."  *Id.* at 16-18.  Plaintiff seeks the Court grant her motion for summary judgment and that her claim be remanded for a new hearing for accurate intelligence, cognitive testing, and diagnosis.  *Id.* at 18.

Defendant argues substantial evidence supports the ALJ's determination that Plaintiff did not have a severe impairment.  (Doc. 19 at 7, 8).  Defendant contends the proper standard of review of whether her impairments are severe is whether substantial evidence supports the ALJ's finding. *Id.* at 9.  Defendant contends that under this standard, the objective medical evidence and other evidence did not establish the existence of a severe impairment as the evidence did not reflect that Plaintiff was significantly limited in her ability to perform basic work activities.  *Id.*  As to discounting Plaintiff's depression, Defendant points to the ALJ's explanation of the record noting stable and otherwise normal mental health findings and Plaintiff's reported ADLs.  *Id.* at 9-10. Defendant further contends the ALJ properly discredited Plaintiff's subjective pain testimony in acknowledging Plaintiff's complaints and properly balancing them against the "unremarkable medical evidence and other evidence" before finding her allegations of mental limitations were not supported.  *Id.* at 11-12.  In noting the ALJ ordered Plaintiff undergo a consultative examination

with Dr. Pasek, Defendant argues the ALJ properly found Dr. Pasek's opinion thereto persuasive as supported by substantial evidence in ultimately discounting Plaintiff's allegations of limited intellectual functioning, and therefore the ALJ had no duty to seek an additional consultative examination. *Id.* at 12-13. Lastly, Defendant contends substantial evidence supports the ALJ's finding that Plaintiff's impairment of urinary incontinence was not severe. *Id.* at 14-15.

In reply, Plaintiff argues that Defendant's reliance on the substantial evidence standard is misplaced as the proper applicable standard here is whether Plaintiff has met the negligible de minimis standard at Step Two and her claim is not groundless. (Doc. 20 at 2). Plaintiff contends Defendant fails to address her arguments that the evidence does not clearly establish that her impairments are not severe. *Id.* at 3-4.

## 2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether [a plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb*, 433 F.3d at 686; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (citation omitted); *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A] step-two

1    determination of whether a disability is severe is merely a threshold determination of whether [a

2    plaintiff] … raises a prima facie case of a disability."); *Lujan v. Berryhill*, 298 F. Supp. 3d 1323,

3    1327 (E.D. Cal. 2018) ("The purpose is to identify [plaintiffs] whose medical impairment is so

4    slight that it is unlikely that they would be disabled even if age, education, and experience were not

5    taken into account.").    "The plaintiff bears the burden of proof at step two to show that an

6    impairment qualifies as severe." *Callahan v. Kijakazi*, 657 F. Supp. 3d 1368, 1380 (E.D. Cal. 2023)

7    (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *Lujan*, 298 F. Supp. 3d at 1327 ("At step-

8    two the [plaintiff] has the burden of providing medical evidence of signs, symptoms, and laboratory

9    findings that show his or her impairments are severe and are expected to last for a continuous period

10   of twelve months.") (citing *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005)).

11          "[A]n ALJ may find that a [plaintiff] lacks a medically severe impairment or combination

12   of impairments only when his conclusion is clearly established by medical evidence." *Webb*, 433

13   F.3d at 687 (quotation marks omitted); *see Smolen*, 80 F.3d at 1290 ("An impairment or

14   combination of impairments can be found not severe only if the evidence establishes a slight

15   abnormality that has no more than a minimal effect on an individual[']s ability to work.") (citation

16   omitted).    *Cf. Ortiz v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 653, 655 (9th Cir. 2011); (ALJ's

17   reliance on two mental evaluations diagnosing claimant with depressive and anxiety disorders but

18   not ruling out either a learning disability or borderline intellectual functioning was not "total

19   absence" of objective evidence of severe medical impairment) *with Ukolov*, 420 F.3d at 1006 (the

20   claimant failed to satisfy his step two burden where "none of the medical opinions included a

21   finding of impairment, a diagnosis, or objective test results").    Thus, "[i]f an adjudicator is unable

22   to determine clearly the effect of an impairment or combination of impairments on the individual's

23   ability to do basic work activities, the sequential evaluation should not end with the not severe

24   evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28).

25          Moreover, "once the ALJ finds [a plaintiff] has at least one severe impairment at Step

26   Two, the ALJ must consider all the [plaintiff's] impairments when formulating the [plaintiff's]

27   RFC, including those impairments the ALJ determined to be non-severe." *Kim R. S. v. Kijakazi*,

28   No. 5:21-cv-00546-JDE, 2022 WL 1405429, at *3 (C.D. Cal. May 4, 2022) (citing *Buck v.*

1   *Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).  "Thus, even if an ALJ erred by finding a

2   particular impairment to be non-severe at Step Two, the error is harmless so long as the limitations

3   of that impairment are considered when formulating the claimant's RFC."  *Id.* (citing cases); *e.g.*,

4   *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (finding the ALJ did not commit reversible

5   error by not considering obesity at step two where the ALJ considered obesity in determining the

6   RFC); accord *Scott H. v. Kijakazi*, No. 3:20-cv-00226-SLG, 2022 WL 392293, at *9 (D. Alaska

7   Feb. 9, 2022).

8           3.    <u>Analysis</u>

9           Plaintiff's motion for summary judgment raises error only as to the ALJ's finding as non-

10  severe her impairments of major depressive disorder, urinary incontinence, and Borderline

11  Intellectual Functioning ("BIF").  *See* (Doc. 16 at 4).  The Court addresses Plaintiff's mental

12  impairments of major depressive disorder and BIF before turning to her physical impairment of

13  urinary incontinence.

14              a.    *The ALJ Erred at Step Two Regarding Plaintiff's Mental*

15                    *Impairments*

16          When evaluating a mental impairment at step two, the regulations provide that the ALJ must

17  "follow a special psychiatric review technique" under 20 C.F.R. § 404.1520a.  *Keyser*, 648 F.3d at

18  725.  "Specifically, the [ALJ] must determine [(1)] whether an applicant has a medically

19  determinable mental impairment, … [(2)] rate the degree of functional limitation for four functional

20  areas, … [(3)] determine the severity of the mental impairment (in part based on the degree of

21  functional limitation), … and then, [(4)] if the impairment is severe, proceed to step three of the

22  disability analysis to determine if the impairment meets or equals a specific listed mental

23  disorder[.]"  *Id.* (citations omitted); *see Frits v. Kijakazi*, No. 2:19-cv-2371 DB, 2021 WL 3883793,

24  at *3 (E.D. Cal. Aug. 31, 2021).

25          Here, the ALJ followed the special psychiatric review technique in finding Plaintiff's

26  mental impairments of depression and BIF non-severe.  The ALJ found that Plaintiff has a

27  medically determinable mental impairment of major depressive disorder.  (AR 17).  The ALJ

28  acknowledged that Dr. Pasek noted Plaintiff's overall cognitive ability is "likely borderline" but

1   could not "imply an objectively documented severe [mental MDI]" from Dr. Pasek's report because

2   Dr. Pasek offered no formal diagnosis due to significant inconsistencies in testing and found that

3   Plaintiff has no impairment in any category.  (AR 21).  The ALJ therefore did not find Plaintiff has

4   Borderline Intellectual Functioning ("BIF") despite Plaintiff's claim thereto.  However, because

5   the ALJ acknowledged Plaintiff has medically determinable mental impairments, she proceeded to

6   consider the four broad functional areas of the "paragraph B" criteria, finding that Plaintiff has no

7   limitation in any area.

8        As to the first functional area of understanding, remembering, or applying information, the

9   ALJ found Plaintiff has no limitation.  The ALJ acknowledged that Plaintiff indicated she has a

10  diminished memory but was able to perform a variety of daily activities, including personal care

11  and grooming, home chores, shopping in stores, and take medication "without reminders."  (AR

12  24).  The ALJ noted from Dr. Pasek's findings that though Plaintiff did not recall several words

13  after a delay, Plaintiff was able to discuss her medical history, school and work history, family

14  history, and exhibited some evidence of recall.  The ALJ cited in support the findings of treating

15  provider Dr. Cornell that Plaintiff "has no restriction in understanding and remembering."  The ALJ

16  further cited in support Dr. Pasek's findings that Plaintiff has no limitation understanding and

17  remembering short, simplistic, and visually based instructions, no limitation understanding and

18  remembering complex, detailed, and visually based instructions, and no limitation handling

19  complex work-related decisions.  (AR 24).  The ALJ likewise found that Plaintiff has no limitation

20  in the remaining functional areas based on Plaintiff's ADLs and the opinion evidence of Drs. Pasek

21  and Cornell.  (AR 24-25).  The ALJ concluded that because Plaintiff's mental MDIs cause no

22  limitation in any of the functional areas and the evidence did not otherwise indicate more than a

23  minimal limitation in her ability to do basic work activities, Plaintiff's mental MDIs are non-severe.

24  (AR 25).

25       Here, the ALJ's reliance on ADLs is misplaced.  "This type of superficial, cursory, and

26  vague analysis is entirely insufficient for review."  *Burke v. Kijakazi*, No. 2:21-cv-0434 DB, 2023

27  WL 2636379, at *6 (E.D. Cal. Mar. 24, 2023) ("[R]eliance on activities such as shopping in a store

28  once a week for 20 minutes or making a meal are problematic for reasons that should be obvious.").

1    That Plaintiff is at times able to perform personal care activities does not clearly establish that she

2    is only minimally limited in her ability to understand, remember, or apply information.  Moreover,

3    Plaintiff has testified to the contrary as she has trouble reading, writing, calculating expenses, and

4    completing certain tasks such as writing her address without looking at her ID or writing a letter.

5    (AR 51-53).        `

6          Though the ALJ appeared to properly apply the special psychiatric review technique in

7    assessing the paragraph B criteria, the Court finds that Plaintiff has met her burden of proof at step

8    two in showing de minimis evidence of her mental impairments affecting her ability to perform

9    work activity for a continuous period of at least 12 months such that the ALJ does not clearly

10   establish these impairments as non-severe.  *Callahan*, 657 F. Supp. 3d at 1380; *Lujan*, 298 F. Supp.

11   3d at 1327 ("At step-two the [plaintiff] has the burden of providing medical evidence of signs,

12   symptoms, and laboratory findings that show his or her impairments are severe and are expected to

13   last for a continuous period of twelve months.") (citation omitted).  For example, Plaintiff identifies

14   record medical evidence that she was diagnosed with major depressive disorder by multiple treating

15   providers over the span of at least five years.  On June 25, 2015, Plaintiff's treating provider Dr.

16   John Baloq diagnosed Plaintiff with "major depressive disorder, recurrent, severe without psychotic

17   features" and noted Plaintiff has a below average intelligence, a learning disability, and "reads at a

18   [third] grade level." (AR 401).  On July 15, 2015, treating provider Dr. Elisa Rambo noted Plaintiff

19   has been diagnosed with "MDD-R" and anxiety disorder, had one aborted suicide attempt, has

20   below average intelligence and impaired memory.  (AR 407, 409).  On December 11, 2015, Dr.

21   Rambo noted in a medication progress follow-up note that Plaintiff's depression was "in remission"

22   but considered the use of an SSRI for management of her anxiety and/or depression.  (AR 423).  In

23   a progress note dated April 1, 2016, Plaintiff was referred to Dr. Bau Xiong and Dr. May Yang

24   with a primary diagnosis for service of major depressive disorder.  (AR 473).  In a September 13,

25   2019, physical with treatment provider Dr. Billy Redmond, he noted that Plaintiff has depression

26   and "was at one time on Xanax for depression" and "she reports feeling sad, crying."  (AR 452).

27   Plaintiff notes that on January 9, 2020, and March 5, 2020, state agency psychological consultants

28   Dr. Abrahimi and Dr. Leizer found that Plaintiff suffered from severe depression and other mental

1    health disorders.  Though both psychiatrists ultimately determined that her depression did not

2    precisely satisfy diagnostic criteria as considered in the psychiatric assessment, they determined

3    that Plaintiff was moderately limited in her ability to understand, remember, and apply information

4    and to concentrate, persist, or maintain pace.  (AR 79, 104).  Plaintiff's medical treatment history

5    reveals she has used Xanax for over ten years and she "shakes/scratches herself if she does not take

6    the Xanax."  (AR 407).

7         As to Plaintiff's allegations of impairment with BIF, the ALJ acknowledged Dr. Pasek's

8    findings regarding her cognitive testing results, noting that Plaintiff's ability to sustain attention,

9    concentrate, and exert mental control is in the borderline range, and that her Weschler Memory

10   Scale scores were in "extremely low for the [Plaintiff's] age group."  The ALJ nevertheless found

11   Plaintiff's BIF to be non-severe because Dr. Pasek noted Plaintiff "appeared to put forth

12   inconsistent effort" and "[t]herefore, her scores should be taken with caution."  (AR 22).  However,

13   the Court notes that Dr. Pasek commented on Plaintiff's test results that her "unique set of thinking

14   and reasoning abilities make her overall intellectual functioning difficult to summarize by a single

15   score[.]"  The ALJ erred in construing Dr. Pasek's caution as evidence "clearly establishing"

16   Plaintiff's BIF does not cause more than a minimal effect on her ability to perform in the workplace.

17   At most, Dr. Pasek's opinion raises an ambiguity as to Plaintiff's overall intellectual functioning

18   capacity generally and as applied to the four functional areas given her asymmetrical nonverbal and

19   verbal reasoning abilities.  Because the ALJ did not consider how Plaintiff's borderline intellectual

20   functioning may affect her ability to function in the workplace, the ALJ erred.  *See Smolen*, 80 F.3d

21   at 1290 ("An impairment … can be found not severe only if the evidence establishes a slight

22   abnormality that has no more than a minimal effect on an individual[']s ability to work.") (citation

23   omitted).

24        Plaintiff has shown she has difficulty in understanding, remembering, and applying

25   information as treatment providers noted she has a diminished memory, a learning disability with

26   a third grade reading level, and below-average intelligence, was assessed with moderate limitations

27   thereto by the state agency psychological consultants, and Plaintiff has testified experiencing

28   difficulty in reading, writing, and needing assistance to complete certain tasks.  Because Plaintiff's

evidence establishes her mental impairments have more than a minimal effect on her ability to work, the Court cannot find that it is clearly established by the medical evidence that Plaintiff's mental impairments are non-severe. *Smolen*, 80 F.3d at 1290; *Webb*, 433 F.3d at 687; *Ortiz*, 425 Fed. Appx. at 655; *e.g.*, *Burke v. Kijakazi*, No. 2:21-cv-0434 DB, 2023 WL 2636379, at *4 (E.D. Cal. Mar. 24, 2023) ("the medical evidence established repeated and consistent instances of mental symptoms causing plaintiff more than minimal limitations"). Further, because the ALJ did not consider the limitations of Plaintiff's mental impairments in any subsequent steps of the sequential evaluation, the error is not harmless. *Kim R. S.*, 2022 WL 1405429 at *3; *Burke*, 2023 WL 2636379 at *6 ("the ALJ did not consider plaintiff's mental impairments in the subsequent steps of the sequential evaluation. … Accordingly, the Court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation.").

> b. *The ALJ Erred at Step Two Regarding Plaintiff's Physical Impairment of Urinary Incontinence*

In her decision, the ALJ acknowledged that Plaintiff uses Myrbetriq for overactive bladder but determined Plaintiff did not present consistent evidence of considerable urinary troubles, noting Plaintiff denied having incontinence on September 13, 2019, and later described only occasional incontinence on December 2, 2019. (AR 19) (citing Ex. 5F). The ALJ found that there is no evidence of record supporting any work-related limitations related to her urinary urgency for any 12-month consecutive period. *Id.* The ALJ found the opinion of consultative medical examiner Dr. Roger Wagner persuasive as the opinion is supported by the medical evidence reflecting that Plaintiff did not present consistent evidence of serious urinary troubles. (AR 20-21). The ALJ therefore found Plaintiff's impairment of urinary incontinence to be non-severe.

Here, the evidence does not clearly establish Plaintiff's urinary incontinence as non-severe. At step two, Plaintiff need not establish "consistent evidence" of her impairments with urinary incontinence for the ALJ to proceed to the next step of the sequential evaluation of her claims. Indeed, Plaintiff need only satisfy the de minimis standard to find her claims meritorious at this stage of the sequential evaluation. *Webb*, 433 F.3d at 687; *see Tomasek v. Astrue*, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb. 11, 2008) (describing plaintiff's burden at step two

as "low").  The ALJ's decision omitted reference to evidence of record documenting Plaintiff's issues with urinary incontinence that have more than a minimal effect on her ability to work.  For example, beginning on December 2, 2019, Plaintiff complained of occasional incontinence, urgency, frequency, and five to seven episodes of nocturia, of which treating provider Adrian Rodriguez, NP, noted he "will give supplies and refer."  (AR 458-60); *see Croker v. Berryhill*, No. 2:15-cv-2423-EFB, 2017 WL 1179148, at *3 (E.D. Cal. Mar. 30, 2017) ("The ALJ failed to reference or discuss most of these treatment records … these isolated records fail to fully account for plaintiff's impairment.").  In September 2020, Plaintiff was referred to and seen by a urologist that diagnosed Plaintiff with stress incontinence and cystocele, and prescribed her Myrbetriq through December 29, 2020, as well as for diapers and other incontinence products.  (AR 491-92).  Moreover, the ALJ failed to consider Plaintiff's testimony that she continues to wear "about two or three" diapers daily or else she "will pee all over [her]self," and because she is "scared" of taking her prescribed medication.  (AR 65-66).  The ALJ failed to acknowledge how Plaintiff's issues with urinary incontinence, including her need to change diapers two to three times a day, may have more than a minimal effect on her abilities to concentrate, persist, or maintain pace over a period of time or adapt or manage oneself in the workplace.  Because this evidence shows Plaintiff's urinary incontinence may have more than a minimal effect on her ability to work, the ALJ therefore erred in finding that the impairment non-severe.  *Webb*, 433 F.3d at 687; *e.g., Leanos v. Comm'r of Soc. Sec.*, No. 1:18-CV-01467-JDP, 2020 WL 8922890, at *1 (E.D. Cal. Mar. 16, 2020) ("The ALJ's determination that [plaintiff's] carpal tunnel syndrome was not severe was legally erroneous. [Plaintiff] was diagnosed and prescribed treatment based upon other medically acceptable clinical diagnostic techniques.").  And because the ALJ did not consider the limitations posed by the impairment in any further sequential analysis, the error is not harmless.  *Kim R. S.*, 2022 WL 1405429 at *3.

**B.    Remedy**

Plaintiff requests this case be remanded for a new hearing.  (Doc. 16 at 18).  "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court."  *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (*quoting Sprague v. Bowen*, 812

19

1    F.2d 1226, 1232 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate

2    if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis

3    omitted) (9th Cir. 2004).

4          In this case, the ALJ erred at step two of the sequential evaluation by finding Plaintiff's

5    mental and physical impairments non-severe without clearly establishing that Plaintiff's

6    impairments would not have more than a minimal effect on her ability to work, and the error is not

7    harmless.  Although the conduct of the five-factor analysis ultimately may lead an ALJ to conclude

8    Plaintiff is not disabled, given these errors, the Court concludes that remand for further proceedings

9    is warranted because additional administrative proceedings may remedy the deficiencies in the

10   ALJ's decision noted herein.

11   **IV.**    **CONCLUSION AND ORDER**

12         For the reasons stated above, **IT IS HEREBY ORDERED** that:

13       1.    Plaintiff's motion for summary judgment (Doc. 16) is GRANTED;

14       2.    The ALJ's decision (Doc. 11) is REVERSED;

15       3.    This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further

16         proceedings consistent with this decision; and

17       4.    The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Janie Misak

18         and against Defendant Commissioner of Social Security.

19   IT IS SO ORDERED.

20   Dated:   **September 16, 2025**

21                          UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28